WILLIAM M. PETERS, plaintiff in error, *vs.* JESSE J. BRADFORD, sheriff, defendant in error.

A sheriff having in his hands an execution against B., founded on a debt contracted since 21st of July, 1868, sold property of the defendant for about $3,000 00. P. having an older judgment, obtained in 1866, for about $1,000 00, gave the sheriff notice and claimed that much of the money. The sheriff paid to the younger judgment $2,000 00 of the money, and retained $1,000 00 in hand to answer the judgment of P., and P. ruled the sheriff for the amount of his judgment. Pending this rule, the defendant, who had procured this money to be set apart as an exemption by the Ordinary, claimed the money:

*Held*, That it is error in the Court to hold that the defendant was entitled to the money as an exemption as against the *fi. fa.* of P. P. is not estopped from insisting on his right to the $1,000 00, because he has failed to require the sheriff to bring into Court the whole amount raised at the sale.

Judgment. Execution. Homestead. Sheriff. Before Judge JAMES JOHNSON.* Muscogee Superior Court. October Term, 1872.

Judgment was rendered in the Inferior Court of Muscogee county, at the March term, 1866, in favor of William M. Peters, against one James F. Winter, for $508 77, principal, and $190 05, interest to date of judgment, and costs. The

execution issuing therefrom was levied on November 4th, 1868, on lot one hundred and ninety-six, in Columbus, but no sale was made thereunder. At the May term, 1870, of Muscogee Superior Court, judgment was rendered in favor of F. L. Brockett for the use of Mathews against said Winter, for $2,350 40 principal, $449 29, interest and costs. The execution issuing therefrom was levied on March 4th, 1871, on lots one hundred and ninety-six and two hundred and eighty-two, in the city of Columbus, and subsequently, on March 27th, 1871, on certain property in the village of Wynnton.

Lot two hundred and eighty-two was sold at April sales, 1871, for $1,000 00. Lot one hundred and ninety-six, and the Wynnton property were sold at May sales, to Henry L. Benning and E. S. Worrill, Esqs., the attorneys for Brockett, the first for $1,400 00, and the latter for $1,100 00. Notice was served upon Jesse J. Bradford, the sheriff, of the claim of any moneys that might come into his hands from the sale of the defendant's property, on the Peters' execution. Payment of said execution was demanded from him out of said moneys, after said sales. Upon refusal, he was served with a rule *nisi*, reciting the foregoing facts, and requiring him to show cause why he should not satisfy said *fi. fa.*, to which he answered as follows:

On the 26th of May, 1871, he, as sheriff, conveyed said lot number one hundred and ninty-six, to Henry L. Benning and E. H. Worrill, and, also, said lot in Wynnton; that they were the attorneys for the plaintiff in *fi. fa.*, Brockett *vs.* Winter; and that by their direction, he credited the amount of their bids, viz: $2,500 00 on said *fi. fa.*; that said *fi. fa.* is still unsatisfied; that the expenses of the sale was $40 50, which he claims shall be paid out of the money in his hands, raised from the sale of lot number two hundred and eighty-two. He has in his hands a cost *fi. fa.*, Officers of Court *vs.* James F. Winter, bearing date 31st July, 1869, which cost *fi. fa.*, by consent of all the attorneys, he has paid out of the money in his hands; that he has in his hands $970 50, part of the $1,000 00, for which he sold lot number two hundred and

eighty-two; that the rest of that sum has been applied by him to the payment of advertising, costs and commissions for selling the lot number two hundred and eighty-two. He further says that said Benning and Worrill claim each a lien on said money for their fees, amounting to $300 00 each, and that he has paid to said Worrill, on account of his fees, $150 00; to said Benning, on account of his fees, $100 .00. He further says that the Ordinary of Bibb county had set apart as exemption of personalty, for the said J. F. Winter, the said money above mentioned, so in the hands of this respondent, and had ordered him to hold said money subject to the order of said Ordinary, to be invested in personal property on account of said James F. Winter and family, under the laws of this State; that a certified copy of said proceedings is herewith shown to the Court, and the said Winter claims said money under said exemption. He further says that the said Winter has given notice to this respondent not to pay over the said money in his hands due on said *fi. fa.* of Peters, because the said *fi. fa.* is null and void. He further says that there was a rule pending against him, in favor of said Brockett, for the use, etc., *vs.* said Winter, for the money; and that the said Peters made himself a party to said rule; and that the question was decided against him (said Peters) in this Court, and was then carried by him to the Supreme Court; and that the decision of this Court was reversed, and the case sent back here; and that the same was withdrawn by plaintiff at the last term. He further says, that at the time when said Peters made himself a party to said rule, and when the same was decided, he claimed only the money received from the sale of lot number two hundred and eighty-two, though he had previously notified this respondent to hold the other money, and set up no claim to the money raised from the other two lots; and that he in consequence settled with said Brockett's attorneys, and credited the *fi. fa.* with the amount for which said two lots sold; and that this rule of Peters against him was not taken until long after said settlement.

Peters traversed the answer of the sheriff. The issue thus

formed was submitted to the Court without the intervention of a jury.

L. T. Downing, in behalf of Peters, testified, that as attorney of plaintiff, he had never relinquished the claim of his client to be paid his execution against James F. Winter out of any and all moneys received by said sheriff from sale of property of said Winter, on and after April 4th, 1871; that not until after it was done, did he know anything of the payment by the sheriff to the attorneys of the Brockett *fi. fa.*, against said Winter, of the proceeds of sale of lot number one hundred and ninety-six, and of the Wynnton property, ($2,-451 75;) that he did not consent to it when it was done, nor at any time afterwards; that when, in June, 1871, Brockett, by his attorney, moved his rule against the sheriff for proceeds of sale of city lot two hundred and eighty-two, plaintiff, (Peters) by witness, was made a party to said rule and contested with Brockett for the money in controversy under said rule; he did not then set up a claim to be paid in behalf of his client out of the other moneys raised from Winter's property by the sheriff, because the money then in controversy under said rule was sufficient to satisfy the execution of his client, but never intended, by so making his client party to said Brockett rule, to waive his client's lien or give up his right to claim payment out of the other money received by the sheriff, and which he then was advised had been paid over to the Brockett *fi. fa.*, nor did he intend by so making his client party to said Brockett rule, to consent, in any way, or be considered as consenting to said payment of $2,451 75, or to sanction the same; that, at the time he made his client a party to said Brockett rule, he knew, from the entries on the Brockett *fi. fa.*, of said payment of $2,451 75; that he was willing to prosecute the rights of his client to the proceeds of sale of lot number two hundred and eighty-two, under said Brockett rule, and not to press his client's lien upon the proceeds of the other property, believing that the money then in controversy was enough to satisfy plaintiff's *fi. fa.*, and so was willing not to move, and did not move, for satisfaction out of the proceeds

Peters vs. Bradford.

of the other property of Winter raised by the sheriff. At the June term of the Court, 1872, after the case had come back from the Supreme Court, was desirous of prosecuting, and did move to prosecute, the rights of his client under the said Brockett rule, when, on the case being called, Brockett, by his attorney, withdrew said rule, whereupon, he moved the present rule; that, after having made his client a party to said Brockett rule, the sheriff made application to him in behalf of Mr. Benning to consent to his letting Mr. Benning have $100 00 of the money in controversy under said rule, on account of fees; that he consented to this with the express understanding that if said $100 00, or any part of it, should be needed to satisfy the judgment in favor of his client, it must be refunded; that, afterwards, Mr. Worrill made personal application to witness to consent for the sheriff to let him have $150 00 out of said money, to which he consented, with the same stipulation as that relating to the money obtained by Mr. Benning.

Said Peters and said Brockett *fi. fas.*, with entries thereon, were considered in evidence.

Henry L. Benning testified that he had received from said sheriff, on account of fees, $100 00, and had no knowledge of the stipulation about refunding it referred to by Mr. Downing. He put in evidence said *fi. fa.* in favor of Brockett, with the entries thereon, and also the said rule brought by Brockett against said sheriff, at May term, 1871. He said that he claimed out of said money $300 00 as fees for himself, $300 00 for Mr. Worrill, less the sums above named, and that he thought the fees reasonable.

The certificate of exemption referred to in the answer of the sheriff was considered in evidence.

The Court held that Peters had abandoned his lien on said $2,451 75, and was therefore postponed to the Brockett *fi. fa.* as to said money ; that the $1,000 00, or proceeds of sale of lot two hundred and eighty-two should be paid over to Winter as his exemption ; and that the rule against the sheriff be discharged. To this decision Peters excepted.

L. T. Downing, for plaintiff in error.

Henry L. Benning; Peabody & Brannon, for defendant.

McCay, Judge.

As against Peters, the defendant in the *fi. fa.* was not, under the decision of the Supreme Court of the United States, in the case of Gunn *vs.* Barry, entitled to this money. Peters' debt was contracted before the 21st day of July, 1868. The record does not show when the debts, on which the other (Brockett's) judgment was founded, was contracted. But we do not think that material. There is nothing in the record to show any such affirmative waiver by Peters of his right to be paid out of the money raised at the second sale, as charges him with *laches,* and as estops him from insisting on his legal right to the money actually in hand. When he moved his rule he had no call to go upon the sheriff for any more of the fund than would pay him. Perhaps, if defendant in the judgment had interfered before the money was paid out to Brockett's *fi. fa.,* and insisted that Peters should go on that fund, because he, Peters, had two and Winter but one, he might have been compelled to do so. But Winter is just as much in fault in not stopping the sheriff as Peters is, and and we can see nothing to justify setting Peters, who has a superior lien, aside for Winter. Had Winter's claim been superior to Peters', we are not so sure that the sheriff would be liable to Peters. He kept enough in hand to pay Peters; but that is not in the case as it now stands.

Nor do we decide anything as to the amount of money now in hand. The Judge did not, as we understand the record, settle the question as to whether the money paid to General Benning and Judge Worrill was by consent of Mr. Downing, so as to lessen the fund for which the sheriff is liable; that is a question of fact turning on the evidence. The rule ought not to have been discharged. It is, in our judgment, still open.

If Mr. Downing only consented on condition that the fund was not reduced below the amount of his claim, the sheriff who had the money in hand and knew the amount, or was bound to know the amount of the *fi. fa.*, ought not to have paid it, or paid it on condition that it should be returned, if needed, to pay Peters.

Judgment reversed.